IN THE UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH CAROLINA

BEAUFORT DIVISION

| | |
|---|---|
| **BRENDA DENISE RIVERS,** ) | CIVIL ACTION NO. 9:10-1654-MBS-BM |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **REPORT AND RECOMMENDATION** |
| ) | |
| **BANK OF AMERICA,** ) | |
| ) | |
| Defendant. ) | |
| _____) | |

This action has been filed by the Plaintiff, pro se, pursuant to, inter alia, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) et seq. Plaintiff, a former employee of the Defendant, asserts a federal claim of race discrimination and a state law claim for defamation.

The Defendant filed a motion for summary judgment pursuant to Rule 56, Fed.R.Civ.P., on May 18, 2011. As the Plaintiff is proceeding pro se, a Roseboro order was entered by the Court on May 19, 2011, advising Plaintiff of the importance of a motion for summary judgment and of the need for her to file an adequate response. Plaintiff was specifically advised that if she failed to respond adequately, the Defendant's motion may be granted, thereby ending this case.

Plaintiff had herself also filed a motion for summary judgment on May 17, 2011, and the Defendant filed a response in opposition to Plaintiff's motion on June 2, 2011. Plaintiff filed an opposition to the Defendant's motion on June 22, 2011, following which the Defendant filed a reply



1

memorandum on July 12, 2011.

These motions are now before the Court for disposition.[1]

## Background and Evidence

Plaintiff alleges in her verified complaint[2] that on January 9, 2000, she was terminated from the Defendant's market team by Tina Oddo and Mike Drohan. Plaintiff alleges that the market team accused her of purposely overdrawing her checking account and conspiring with and encouraging a teller (Angel Gerena) to override her transactions so that she could perform the transactions herself and take "money out of the draw". Plaintiff alleges that this constitutes defamation. Plaintiff alleges that she had available funds to be withdrawn from her checking account and that she has documents to support her claim. Plaintiff alleges that the Defendant's "defamation of character [has caused] hindrance or negative stigma in my attempts to secure employment in any other organization."

With respect to her discrimination claim, Plaintiff's original complaint form was blank, with her allegations being set forth in an attached letter with exhibits. In response to answers to the Court's Special Interrogatories, Plaintiff attached additional documents dealing with the South Carolina Human Affairs Commission (SCHAC) investigation of her complaint, and the issuance of

---

[1]This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(g), D.S.C. The Defendant and Plaintiff have both filed motions for summary judgment. As these are dispositive motions, this Report and Recommendation is entered for review by the Court.

[2]In this Circuit, verified complaints by pro se litigants are to be considered as affidavits and may, standing alone, defeat a motion for summary judgment when the allegations contained therein are based on personal knowledge. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991). Since Plaintiff has filed a verified Complaint, the undersigned has considered the factual allegations set forth in the verified Complaint in issuing a recommendation in this case.



a right to sue letter. From these documents, it is clear that Plaintiff alleges that she was unfairly passed over for a promotion or denied opportunities and received unfair treatment in her job because of her race (African American). Plaintiff's complaint seems to stem from an "AM [Assistant Manager] Assessment" that she contends was biased against African Americans. Plaintiff states that she did not pass this assessment during the period October 2007 - 2008, but that after asking her manager (Tina Oddo) to help with some extra training, Oddo partnered her with Kelly Martin, and she subsequently passed her AM Assessment in July 2009. However, Plaintiff argues that Sun City (where she was employed) was not allotted to have an AM at that location, and that she was unable to transfer. Plaintiff also contends that she always met or exceeded expectations on her performance reviews.

Plaintiff states that on December 23, 2008[3] she was asked by Oddo and Drohan if she or any other associate had purposely overdrawn an account. Plaintiff contends that Oddo and Drohan subsequently told her that they did not want her on their team because they did not trust her, although Drohan did later tell her that he was not aware that funds had been available in her account for an immediate withdrawal. Oddo and Drohan then discharged Plaintiff for utilizing her position for personal gain on January 9, 2009. See generally, Exhibit to Plaintiff's Complaint [email dated August 19, 2009].

As attachments to her motion for summary judgment, Plaintiff has submitted a copy of a document titled "Bank of America Corporation - Code of Ethics"; a copy of a letter from the South Carolina Human Affairs Commission dated January 7, 2009; a copy of a customer receipt

---

[3]While Plaintiff has this date as being December 23, 2009, from the remainder of her filings it is apparent that 2009 is a typographical error - the correct date actually being December 23, 2008.

3



indicating an electronic withdrawal from a Bank of America account in the amount of $950 on November 14, 2008; a copy of an electronic withdrawal receipt (undated) showing a withdrawal in the amount of $950 and an available balance of $989.21; another electronic withdrawal receipt dated January 6, 2009 showing a withdrawal amount of $950 and an available balance of $39.21; another document dated December 10, 2008 for Angel Gerena (significance unclear); a copy of what appears to be a directory business card for Christopher Shroate; a copy of what appears to be a directory business card for Tina Oddo; and copy of a Hold and Transaction History for an account for the search period November 13, 2008 through November 14, 2008.

In support of its motion for summary judgment, the Defendant has submitted an affidavit from Michael Drohan, who attests that he is Consumer Market Executive for the Defendant's Coastal Carolinas Market. Drohan attests that he has knowledge of the Coastal Market's daily operations, the Defendant's Policies and Procedures, as well as the associates who worked in his markets. Drohan attests that Plaintiff worked as a Teller Operations Specialist at the Sun City Walmart In-store Banking Center from 2007 until the beginning of 2009. Drohan attests that the Sun City Walmart In-store Banking Center was one of the three smallest banking centers in the Coastal Market, which has a total of twenty-five (25) banking centers. Drohan attests that Plaintiff expressed interest in becoming an assistant manager, at which time he and Consumer Market Manager Tina Oddo informed her that she would need to work as a teller operations specialist at a larger banking center in order to gain more experience before becoming an assistant manager. Drohan attests that Plaintiff was offered the opportunity to move to a larger banking center to gain this experience, but that she declined the opportunity. Drohan attests that he routinely requires Teller Operators Specialists in small banking centers to work in larger banking centers to

4



gain experience before becoming an assistant manager. Drohan also attests that he is not aware of Plaintiff ever submitting an application for any Assistant Manager positions.

Drohan attests that on December 22, 2008, Corporate Security Investigator Rodney Kicklighter contacted him and Ms. Oddo regarding the Plaintiff, reporting that an issue had come to the attention of Corporate Security that a teller at Plaintiff's Banking Center performed a cash withdrawal and transfer on her account when the account was overdrawn. Drohan attests that in response to this contact, he and Oddo further investigated the matter and met with the Plaintiff on December 23, 2008. Drohan attests that Plaintiff denied performing any improper transaction and asked them to provide her with documentation. Kicklighter subsequently provided documents relating to the transaction at issue. Drohan attests that the electronic journal report documents showed that Plaintiff's checking account was overdrawn on November 14, 2008. See also, Exhibit to Drohan Affidavit (BA 0131). Drohan attests that the documents also showed that on November 14, 2008, at 8:35 a.m. (prior to the Banking Center opening) teller Angel Gerena, whom Plaintiff supervised, processed a $950 withdrawal from Plaintiff's checking account, that Gerena received an error when he tried to process the withdrawal because the account was overdrawn, and that Gerena manually overrode those errors and processed the transaction. See also, Exhibit to Drohan Affidavit (BA 0131 - 0133). Drohan attests that documents further show that at 8:36 a.m., Gerena transferred $20 to Plaintiff's savings account, that Gerena received an error when he tried to process that transaction because the account was overdrawn, and that he again manually overrode the error and processed the transaction. See also, Exhibit to Drohan Affidavit (BA 0131 - 0134).

Drohan attests that on November 14, 2008, Plaintiff's payroll check would have posted to her account at 12:01 a.m. and been listed in a pending status, but would not have been



reconciled and applied to her overdrawn balance until later in the day. Drohan attests that for a short window of time before the accounts reconciled, Plaintiff's account would have initially shown funds as being available due to the pending payroll deposit, but because the account was overdrawn, a transaction on the account would not have been processed without a manual override. Therefore, when the $950 withdrawal was processed, Plaintiff removed money from her account that should have applied to her negative balance for the money Plaintiff owed to Bank of America. Drohan attests that the investigation also revealed that after November 14, 2008, Plaintiff shut off the direct deposit of her payroll checks. Drohan attests that, because of this action, he concluded that Plaintiff took steps to ensure that any future payroll amounts would not be deposited into her account and applied to her negative balance. Drohan attests that, as of December 2008, Plaintiff's checking account was overdrawn in the amount of $1,100.78. See also, Exhibit to Drohan Affidavit (BA 0130).

    Drohan attests that he and Oddo met with the Plaintiff again on January 7, 2009 and also interviewed Mr. Gerena. Drohan attests that Plaintiff initially claimed that she could not recall the transaction (which she had also done in the initial meeting on December 23, 2008), but that after she learned that Gerena had been interviewed,[4] Plaintiff admitted that she withdrew money from her checking account and stated that she needed to pull money out of her account to pay bills or the overdrafts would have "eaten all of the money up." Drohan attests that he determined that Plaintiff

---

[4]Drohan attests that Gerena reported that Plaintiff had asked him to process the transactions, and instructed him to manually override the error messages. However, as no affidavit from Gerena has been submitted, this statement by Droham in his affidavit has not been considered for purposes of ruling on Defendant's motion. Bush v. Barnett Bank of Pinellas County, (916 F.Supp. 1244, 1256 (M.D.Fla. 1996)[Refusing to consider hearsay statement in affidavit where Plaintiff produced no affidavit or deposition from declarant].



had improperly used her knowledge of the way funds were posted to her account to withdraw money before that money could be applied to her overdrawn balance, that she had improperly instructed her subordinate Gerena to override the error messages on her account so that the transactions could be processed, and that Plaintiff had taken steps to prevent future payroll checks from being applied to her negative balance. Drohan attests that he also concluded that Plaintiff had attempted to mislead him during the investigation because she initially denied having any knowledge of the events. Drohan attests that he therefore decided to terminate Plaintiff's employment for violating the Defendant's Code of Conduct and Work Environment/Personal Conduct Policy. Drohan attests that he and Oddo discharged Plaintiff on January 9, 2009. See generally, Drohan Affidavit, with attached exhibits.

The Defendant has also submitted a copy of excerpts from Plaintiff's Deposition, with attached Exhibits.

As attachments to her response to the Defendant's motion for summary judgment, Plaintiff has attached a transaction history for a Money Market Savings Account showing transactions in November and December 2008, as well as a copy of a Quarterly Funding for Banking Center Associates Quality Performance Assessment for the period July through September 2008.

**Discussion**

Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Rule 56, Fed.R.Civ.P. The moving party has the burden of proving that judgment on the pleadings is appropriate. Temkin v. Frederick County Comm'rs, 945 F.2d 716, 718 (4th Cir. 1991).



Once the moving party makes this showing, however, the opposing party must respond to the motion with specific facts showing there is a genuine issue for trial. Baber v. Hosp. Corp. of Am., 977 F.2d 872, 874-75 (4th Cir. 1992). Further, while the Federal Court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, see Cruz v. Beto, 405 U.S. 319 (1972); Haines v. Kerner, 404 U.S. 519 (1972), the requirement of liberal construction does not mean that the Court can ignore a clear failure in the pleadings to allege facts which set forth a Federal claim, nor can the Court assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Social Services, 901 F.2d 387 (4th Cir. 1990). Here, after careful review and consideration of the arguments and evidence presented, the undersigned finds and concludes that the Defendant is entitled to summary judgment in this case.

## I.

## Title VII Claim[5]

Plaintiff's Title VII race discrimination claim is based on her assertion that she received discriminatory treatment, including being denied a promotion to an Assistant Manager position, based on her race. Defendant argues that Plaintiff has submitted no evidence that supports such a claim, and the undersigned is constrained to agree.

Plaintiff's claim requires proof of intentional discrimination, either by direct evidence

---

[5]In her response to the Defendant's motion for summary judgment (Court Docket No. 43), Plaintiff states in an attachment that she also wants to pursue her discrimination claim under 42 U.S.C. § 1981. Plaintiff did not assert such a claim in her Complaint, but even if she had, it would be subject to dismissal for the same reasons her Title VII claim is subject to dismissal. See Ross v. Kansas City Power & Light Co., 293 F.3d 1041, 1050 (8th Cir. 2002)["In analyzing a claim . . . under section 1981, we apply the same standards as in a similar Title VII claim."]; Long v. First Union Corp. of Virginia, 894 F.Supp. 933, 945 (E.D.Va. 1995); Kim v. Nash Finch Co., 123 F.3d 1046, 1063 (8th Cir. 1997).



or by the structured procedures set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Plaintiff has not offered any direct evidence of race discrimination,[6] and Defendant argues that Plaintiff has failed to present sufficient circumstantial evidence to create a genuine issue of fact as to whether any of the cited employment actions occurred because of her race under the McDonnell Douglas proof scheme to survive summary judgment.[7]  Again, the undersigned is constrained to agree.

The United States Supreme Court articulated a three-part formula for analyzing discrimination cases in McDonnell Douglas.  First, Plaintiff must establish a prima facie case of discrimination.  If a prima facie case is established, a rebuttable presumption is created that the Defendant unlawfully discriminated against her.  Second, once this presumption has been established, the burden of production shifts to the Defendant to show a legitimate, non-discriminatory reason for its actions.  Third, if the Defendant shows a legitimate, non-discriminatory

---

[6] Direct evidence of discrimination is evidence which, if believed, would prove the existence of a fact without any inferences or presumptions. O'Connor v. Consolidated Coin Caterers Corp., 56 F.3d 542, 548-549 (4th Cir. 1995), rev'd on other grounds, 517 U.S. 308 (1996); Black's Law Dictionary, 460 (6th Ed. 1990) (citing State v. McClure, 504 S.W.2d 664, 668 (Mo.Ct.App. 1974)); see Williams v. General Motors Corp, 656 F.2d 120, 130 (5th Cir. 1981), cert. denied, 455 U.S. 943 (1982).

[7] Plaintiff's claim could also be considered under the so-called "mixed-motive" analysis, even though Plaintiff has presented only circumstantial, or in-direct, evidence of discrimination. Historically, consideration of a claim under the mixed-motive analysis was only proper in direct evidence cases, but that is no longer the case. See Hill v. Lockheed Martin, 354 F.3d 277, 284-285 (4th Cir. 2004); Mereish v. Walker, 359 F.3d 330, 339-340 (4th Cir. 2004); cf. Taylor v. Virginia Union Univ., 193 F.3d 219, 232 (4th Cir. 1999) [en banc]. However, neither party has argued for consideration of Plaintiff's claim under a "mixed-motive" analysis. Therefore, the undersigned has only evaluated Plaintiff's claim using the McDonnell Douglas analysis. See Hopes v. Roche, No. 04-2963, 2005 WL 1812820 at * 6 n. 2 (D.Md. Aug. 2, 2005) (citing Nagy v. Baltimore Life Ins. Co., 49 F.Supp.2d 822, 836 n. 13 (D.Md. 1999) [declining to engage in "mixed-motive" analysis where parties have not argued a mixed-motive theory.]).

9



reason for its actions, the burden is then on the Plaintiff to come forward with evidence that the Defendant's asserted reasons for its actions are a mere pretext for its true discriminatory motives, and that the actions of the Defendant were really based on Plaintiff's race. McDonnell Douglas Corp., 411 U.S. at 802-805; Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 252-256 (1981); Conkwright v. Westinghouse Elec. Corp., 933 F.2d 231, 234-235 (4th Cir. 1991). Despite these shifting burdens of production, however, Plaintiff retains the ultimate burden of persuasion on the issue of discrimination throughout. Texas Dep't of Community Affairs, 450 U.S. at 252-253; see also St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 507 (1993).

In order to meet the first prong of the McDonnell Douglas formula and establish a prima facie case of race discrimination, Plaintiff must show (1) that she is a member of a protected class; (2) that she was performing her job satisfactorily; (3) that she was subjected to an adverse employment action; and (4) that other employees who were not members of her protected class were treated more favorably, or there is some other evidence giving rise to an inference of unlawful discrimination. See generally, Austen v. HCA Health Services of Virginia, Inc., No. 00-2359, 2001 WL 242203 at **1 (4th Cir. Mar. 12, 2001); Hughes v. Bedsole, 48 F.3d 1376, 1383 (4th Cir. 1995), cert. denied, 516 U.S. 870 (1995). See also Gilbert v. Penn-Wheeling Closure Corp., 917 F.Supp. 1119 (N.D.W.Va. 1996). With respect to a failure to promote, to establish a prime facie case Plaintiff must show that 1) she is a member of a protected class; 2) she applied for the position in question; 3) she was qualified for that position; and 4) the Defendant rejected her application under circumstances that give rise to an inference of unlawful discrimination. Anderson v. Westinghouse Savannah River Co., 406 F.3d 248, 268 (4th Cir. 2005).

It is undisputed that Plaintiff is a member of a protected class (African American),



and that Plaintiff was subjected to an adverse employment action when she was discharged. However, Plaintiff has failed to present any evidence to establish the remaining prongs of her prima facie cases for either claim. With respect to her discharge, while Plaintiff denies that she improperly had funds withdrawn from her account, the Defendant has provided several exhibits to show that this transaction in fact occurred. Indeed, Plaintiff's own exhibits (Customer Receipt dated November 14, 2008; Money Market Savings Transaction History showing transactions on November 14, 2008) also appear to confirm that these transactions resulted in a negative balance in Plaintiff's account. Plaintiff notes that employee Angel Gerena was responsible for these transactions, and the Defendant does not dispute that Gerena was the employee who actually performed the transactions. See also, Defendant's Exhibit A, (Plaintiff's Deposition), at p. 69. However, while Plaintiff appears to argue that Gerena was overriding information in Plaintiff's accounts for Plaintiff's benefit without her permission, she provides no cogent argument for why this employee (who Defendant's evidence shows was Plaintiff's subordinate)[8] would have engaged in such activity without her authorization. See Silvia Dev. Corp. v. Calvert County, Md., 48 F.3d 810, 818 (4th Cir. 1995)[Explaining that while the party opposing summary judgment is entitled to the benefit of inferences that can be drawn from the evidence, "[p]ermissible inferences must still be within the range of probability" and that "[w]hether an inference is reasonable cannot be decided in a vacuum; it must be considered in light of the competing inferences to the contrary"(internal quotation marks omitted)]. Therefore, the evidence before the Court is not sufficient to create a genuine issue of fact as to whether the Plaintiff was adequately performing her job.

The Defendant has also submitted evidence to show that its code of conduct prohibits

---

[8]See Drohan Affidavit, ¶ 19.



dishonest acts, including associates using their position for personal gain, improperly pressuring associates for personal purposes, failing to fully cooperate in company investigations, and that violations of the Code of Ethics can lead to immediate termination of employment. See Defendant's Exhibit A (Plaintiff's Deposition), at pp. 62-65, and attached Exhibit 10 (BA 0015), Exhibit 11 (BA 0021-0022). Plaintiff has provided no evidence to dispute the Defendant's evidence that she maintained an overdrawn account, that Plaintiff shut off the direct deposit of her payroll check, or to challenge the Defendant's evidence that the Defendant had concluded that Plaintiff was taking action to prevent future payroll payments from being applied to her negative bank balance and had misled investigators into her activities. Drohan Affidavit; see also Plaintiff's Deposition, pp. 54-55, 68-69. Therefore, even assuming Plaintiff's claim that she did not authorize Gerena to perform the financial transactions at issue to be true, Plaintiff has provided no evidence to show a discriminatory motive by the Defendant. Cf. Hawkins v. Pepsico, Inc., 203 F.3d 274, 281 (4th Cir. 2000) [affirming grant of summary judgment to the employer where the employee did not "show that...[the] problems were [racial] in nature"]; see also Kariotis v. Navistar Intern. Transp. Corp., 131 F.3d 672, 680 (7th Cir. 1997) ["Discrimination statutes allow employers to discharge employees for almost any reason whatsoever (even a mistaken but honest belief) as long as the reason is not illegal discrimination. Thus when an employee is discharged because of an employer's honest mistake, federal anti-discrimination laws offer no protection."].

Nor has Plaintiff provided any evidence whatsoever to show a discriminatory animus on the part of the Defendant, or that other employees who are not members of her protected class were treated more favorably, thereby giving rise to an inference of unlawful discrimination. See also Defendant's Exhibit A (Plaintiff's Deposition), pp. 105-108. Hence, Plaintiff's disparate treatment



claim resulting in her discharge is subject to dismissal. Nichols v. Caroline County Bd. of Educ., 123 F.Supp.2d 320, 327 (D.Md. 2000)[Plaintiff's contention that supervisors subjected him to adverse employment actions "because I am who I am" insufficient to establish [discriminatory] character to their disagreements and misunderstandings]; see Sullivan v. River Valley School District, 197 F.3d 804, 815 (6th Cir. 1999), cert. denied, 530 U.S. 1262 (2000) ["Without a showing that those other reasons were discriminatory, [Plaintiff] cannot establish a prima facie case for relief...."]; Dowe v. Total Action Against Poverty in Roanoke Valley, 145 F.3d 653, 657 (4th Cir. 1998); cf. Rudolph v. Hechinger, 884 F.Supp. 184, 188 (D.Md. 1995) ["Title VII (does) not protect against unfair business decisions - only against decisions motivated by unlawful animus"], citing Turner v. Texas Instruments, Inc., 555 F.2d 1251, 1257 (5th Cir. 1977); Colbert v. Tapella, 677 F.Supp. 2d 289, 295 (D.D.C. 2010)(quoting Hairsine v. James, 517 F.Supp.2d 301, 308-309 (D.D.C. 2007)["[T]he scope of review in employment discrimination cases is more narrow than [Plaintiff] wishes because federal courts are not review boards for local employment decisions . . . . A personnel decision can be silly, it can be unfair, and it can be short-sighted without being illegal; Title VII protects discriminatory decisions, not wrong ones."]).

With respect to Plaintiff's failure to promote claim, Plaintiff has presented no evidence to show that she was qualified for the position of Assistant Manager, or that she was denied promotion to any such position under circumstances giving rise to an inference of unlawful discrimination.[9] It is undisputed in the evidence that Plaintiff did not even pass the assessment

---

[9]Defendant also argues that Plaintiff failed to even apply for an Assistant Manager position. However, since it is clear that Plaintiff did discuss this issue with her supervisors (although there is no evidence she actually ever applied for a particular Assistant Manager position), the undersigned has focused on the other prongs of Plaintiff's failure to promote prima facie case. But see, Tyndall
(continued...)

13



examination until July 2008, nor has Plaintiff presented any evidence to contest Defendant's evidence showing that Teller Operations Specialists (the position Plaintiff held) in small banking centers were routinely required to work in larger banking centers to gain experience before becoming an assistant manager. Plaintiff has also offered no evidence to dispute that Drohan offered her the opportunity to move to a larger banking center to gain this experience, but that she declined the opportunity to do so. Defendant's Exhibit B (Drohan Affidavit), at ¶ ¶ 9-10; Defendant's Exhibit A (Plaintiff's Deposition), pp. 87-88, 96-97.

At her deposition, Plaintiff stated that a white employee named Deborah Martin was given an Assistant Manager position, even though she had "less experience". Defendant's Exhibit A (Plaintiff's Deposition), p. 89. However, Plaintiff has provided no evidence to show what Deborah Martin's qualifications and experience with the bank were, or to even show what position Martin was transferred into. Lowery v. Circuit City Stores, Inc., 158 F.3d 742, 760 (4th Cir. 1998)[In order to succeed on a failure to promote claim, a Plaintiff must ordinarily show that they were more qualified for the position than the individual who actually received the position], rev'd on other grounds, 119 S.Ct. 2388 (1999), aff'd on reh'g, 206 F.3d 431 (4th Cir.  ), cert. denied, 121 S.Ct. 66 (2000). Further, Plaintiff conceded that no one at Bank of America ever gave any indication that she was not being promoted to a position because of her race, and she also testified that she was unaware of any documents that would support her claim that she was discriminated against because of her race. Defendant's Exhibit A, (Plaintiff's Deposition), p. 108. When asked the basis for her belief

---

[9](...continued)
v. Dynamic, Inc., 997 F.Supp. 721, 727-728 (E.D.Va. 1998)[holding that as a matter of law, "a generally expressed interest in 'advancing in employment' does not constitute an application for a position).



that Oddo had not promoted her to an Assistant Manager position because of her race, Plaintiff simply stated that she "felt that it was about my race . . . . she always gave me the runaround". Defendant's Exhibit A (Plaintiff's Deposition), p. 96.

Plaintiff's own general and conclusory statements that she believes she was discriminated against, no matter how heartfelt, are simply not sufficient absent any supporting evidence to create an inference of discrimination, or to defeat the Defendant's motion for summary judgment on this claim.  Cook v. CSK Transp. Corp., 988 F.2d 507, 513 (4th Cir. 1993) ["[U]nsupported allegations do not establish a prima facie case of [ ] discrimination...."]; see also, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986) [there must be evidence on which a jury could reasonably find for the Plaintiff]; Evans v. Technologies Applications & Serv. Co., 80 F.3d 954, 960 (4th Cir. 1996) ["unsubstantiated allegations" are insufficient to defeat summary judgment]; cf. Boden v. U.S. Amada Ltd., 978 F.Supp. 657, 659 (E.D.N.C. 1997) [former employee's own subjective belief and conclusory statements that he had been discriminated against are not sufficient to raise reasonable inference of unlawful discrimination]; Yarnevic v. Brink's Inc., 102 F.3d 753, 757-758 (4th Cir. 1996) [holding that remote inferences and conclusory allegations cannot defeat summary judgment].  Therefore, based on the evidence discussed hereinabove, the undersigned cannot find that Plaintiff has submitted evidence sufficient to create a genuine issue of fact with respect to either her disparate treatment or failure to promote claims.  Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985) [A party opposing summary judgment "cannot create a general issue of fact through mere speculation or by the building of one inference upon another."].

Plaintiff's race discrimination claims should be dismissed.  Gairola v. Virginia Dep't of General Services, 753 F.2d 1281, 1288, n. 4 (4th Cir. 1985) [a case should be dismissed "...when



15

the only evidence in support of the plaintiff's...case is based on unfounded conjecture...that her disfavorable treatment was the result of discrimination...."]; Hawkins, 203 F.3d at 281 [affirming the grant of summary judgment to the employer where the employee did not "show that...[the] problems were [racial] in nature"].

## II.

### Defamation Claim

Plaintiff also asserts a state law claim for defamation, alleging that the Defendant defamed her character by discharging her for purportedly utilizing her position for personal gain, thereby giving her a "negative reputation" which has hindered her attempts to secure employment. In South Carolina, the elements for a defamation claim are: 1) a false and defamatory statement concerning another; 2) an unprivileged publication to a third party; 3) fault on the part of the publisher; and 4) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication. Murray v. Holnam, Inc., 542 S.E.2d 743, 748 (S.C.Ct.App. 2001). Defamatory communications can take two forms: libel and slander. Slander is a spoken defamation, while libel is a written defamation or one accomplished by actions or conduct. Swinton Creek Nursery v. Edisto Farm Credit, 514 S.E.2d 126 (S.C. 1999). Both forms of defamation appear to be alleged here, although Plaintiff has not actually cited to any written documents supporting her claim.

In her motion for summary judgment, Plaintiff argues that Oddo discussed her termination with other employees between January 6, 2009 and January 8, 2009, arguing that "[a]n associate directed the telephone call from a supervisor from an assistant manager and overheard the conversation which were (sic) discussed at the Walmart Banking Center about Plaintiff's



termination. Plaintiff was notify (sic) about the discussion while still employed with Bank of America." See Plaintiff's Memorandum, at p. 3. At her deposition, Plaintiff testified that "it was brought to my attention that it was discussed about my termination prior and during my termination that they was planning on terminating me based on my account." Defendant's Exhibit A (Plaintiff's Deposition), p. 74. Plaintiff further testified that it was Oddo who made the defamatory statement about her, but when asked what the statement was that Oddo had made, Plaintiff responded only that Oddo had said "that I was being terminated." Id. When then asked who it was that Oddo had made this statement to, Plaintiff testified "individuals at Bluffton Commons", but was unable to provide any names. Id., p. 76. Plaintiff went on to testify about several other employees she contends were discussing her termination among themselves, but when asked again what evidence she had that Oddo had discussed her termination with any of these individuals, in particular with a Bryce Zimmerman, Plaintiff had no corroborating evidence. She had not personally heard any such conversations, nor had anyone else told her that Oddo had told Zimmerman that Plaintiff had been terminated. Id., pp. 76-79.

In sum, Plaintiff has presented no evidence to show an unprivileged publication to a third party (assuming Zimmerman, an employee of Bank of America, could even be considered a "third party")[10], other than her own surmise and speculation. House v. New Castle County, 824 F.Supp. 477, 485 (D.Md. 1993) [Plaintiff's conclusory allegations insufficient to maintain claim]. Further, the statement Plaintiff alleges Oddo made, that she was being terminated (again even

---

[10] Cf. Bell v. Evening Post Publishing Co., 459 S.E.2d 315, 317 (S.C. Ct. App. 1995)[Communications between officers or agents of the same corporation generally enjoy a qualified privilege]; see also Weeks v. Union Camp Corp., Nos. 98-2814, 98-2815, 2000 WL 727771 at * 6 (4th Cir. June 7, 2000)[same](citing Bell, 459 S.E.2d at 317].



assuming for purposes of summary judgment that Plaintiff had presented evidence to show Oddo had made such a statement to Zimmerman), was neither false nor defamatory. See Holtzscheither v. Thomason Newspapers, Inc., 506 S.E.2d 497, 508-509 (S.C. 1998)[[D]efamation allows a plaintiff to recover injury to [her] reputation as the result of the defendant's communication to others of a false message about the plaintiff....The defamatory meaning of a message or statement may be obvious on the face of the statement, in which case the statement is defamatory per se.]; see also Brewer v. Metropolitan Atlanta Rapid Transit Auth., 419 S.E.2d 60, 61 (Ga.Ct.App. 1992) [mere act of disciplining and discharging employee is not defamatory as a matter of law].

Therefore, Plaintiff has failed to submit evidence sufficient to give rise to a genuine issue of fact that she was subject to defamation by the Defendant, and her claim for defamation should be dismissed. King v. Charleston Co. School District, 664 F.Supp.2d 571, 587 (4th Cir. 2009)[Granting summary judgment to Defendant where the allegedly defamatory statement was true]; Jones v. Camden Police Department, No. 09-2161, 2010 WL 3489021 at * 9 (D.S.C. Aug. 13, 2010)[Granting summary judgment to Defendant where Plaintiff failed to produce evidence showing that the Defendant had spoken with anyone or made any comments to anyone regarding the Plaintiff].

## **Conclusion**

Based on the foregoing, it is recommended that the Plaintiff's motion for summary judgment be **denied**, that the Defendant's motion for summary judgment be **granted,** and that this case be dismissed.



The parties are referred to the Notice Page attached hereto.

_____
Bristow Marchant
United States Magistrate Judge

August 12, 2011
Charleston, South Carolina



**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).